The first case for argument this morning is 17-1502 John Bean Technologies v. Morris & Associates. Mr. Martz, whenever you're ready. Good morning. May it please the court. I'm Gary Martz. I'm here to be the appellant of John Bean Technologies Corp. And the issue on appeal for the court is the district judge's ruling. In the blue brief at 21-23, you argue that Echol oil estalbul may only be found when there is silence that follows, quote, a communication indicating that the patentee would take immediate action. And you say that's the only way. But in ABB Robotics, we explicitly said, quote, such an enforcement threat followed by silence, ellipsis, is not the only way that silence can be misleading in action. How do you reconcile that opinion with your position? I think the opinion reconciles with our position in this case, Your Honor, because in ABB Robotics, there was more that went on there than simply what happened in this case, which was the receipt of a letter followed by no action by my client. In ABB Robotics, there were extensive communications over several years involving the patent, and there was an explicit objection to the activities of the alleged infringer. Morris provides a letter which says, we have received letters from your attorney that assert infringement of 037. Do you dispute that multiple letters were sent? That's a different patent. I know. That is a previous dispute between the parties that was involving an entirely different patent that was completely resolved. I understand, but why shouldn't we consider JBT's diligent enforcement of 037 in evaluating whether Morris inferred that JBT did not intend to enforce 622? Because the interaction on the previous patent was of an entirely different nature from the patent that was involved in this case. That was a small dispute involving a component, an air header on an auger chiller, and that was resolved through communications between the parties, between executives of the two parties, and it was resolved over for a payment of $12,000. The dispute here is of an entirely different nature. These are involving machines that are big industrial machines on poultry lines. Can I just interrupt that? I have some confusion about this case, and I don't know if there's an argument that you should have made that you've just waived or there's a reason this isn't four square in this case, but there was a re-exam here, and this complaint is based on the re-exammed claims, which are significantly, I don't know maybe, I don't know what difference it makes, but there were substantial changes made to the original claims. The letter dealt with the original claims. Did you go into the district court and say, well, no, this letter has nothing to do with anything because this was about claims that are no longer in existence and the current litigation is about revised claims? That argument was not made at the district court. Do you think that's an argument that should have been made or that carries the day? I mean, it seems a little odd to me that all of this is about assertions made 15 or 12 years ago, earlier, about claims that don't even really exist in the same forms anymore, and those claims as they existed that were subject to the letter are not the subject of the current dispute, right? So tell me why that's not a good argument, whether it's waived or not. That is correct that this lawsuit was filed after the re-examination. I'm not sure why that argument wasn't made, to be honest. Well, on its face, as I said, I haven't examined the details of how the changes impact the infringement claims or anything like that. But just generally, is there an argument to be made that the claims are different enough so that whatever was going on 15 years ago with respect to that letter and the anticipation and the arguments your friend made about validity are kind of mooted out by the current claim? I'm not sure, to be honest. I don't know that that was the case. I don't believe that they're significantly that different, that it would have made a tremendous amount of difference. Well, you had five new claims that were added. Yes. How can that not be significantly different? I honestly can't answer that. I mean, I think that the products are largely the same, and I know that the claims are slightly different following the re-examination. But I don't think, I think that our belief was that that didn't change the calculus for the purposes of equitable estoppel. So that argument was not made. But I think that the more important point here is that there was no misleading conduct by CAT, the predecessor in interest to John Bean Technologies. Well, but as Judge Wallach alluded to, I mean, silence can be misleading conduct. So why isn't it the case that with their letter, they clearly anticipated a response or a rebuttal if one existed? So why couldn't they assume, they gave a very detailed analysis with respect to their invalidity contentions in that letter. And your failure to respond, even to say, you're wrong, we're right, made them think fairly reasonably that you kind of agreed with their response and they were off the hook. Because that doesn't fit with this court's precedent in previous cases in which it's found misleading conduct. In previous cases where there's been misleading conduct, there's always been some sort of affirmative statement by the patentee that there was some sort of allegation of infringement or contention of infringement. But that's why 337 matters. Well, I think it's a different dispute involving a different patent. But look at it from our viewpoint. It's a pattern of practice. Okay, so your opponent gets to say, geez, when they want to enforce something, they know how to do it. They do it vigorously. And here we answered them and said, hey, here's all our problems with your patent and you leave us alone. Why not?  It is just a tremendously different circumstance. That was, as the series of letters that are in the record show, that was a dispute that was handled between the parties, between executives of the parties, over a relatively small amount of money. I think the initial offer that was made to settle that dispute was $2,000. But that weighs towards them, not towards you. But I don't think that it does, Your Honor, because it's an entirely different set of circumstances. It was an entirely different sort of negotiation. The letter in this case that was sent in June of 2002 relating to the patent that's at issue was a very aggressive assertion by Morris' attorney that led off with, from our point of view, a false assertion. Why did you say that, though? They just chose not to. But I don't think that it was misleading because there was never any sort of assertion of any kind of infringement or anything of that nature involving this patent in this particular dispute. There were allegations that claims of infringement were being made to the customers. Those are hearsay, and they don't factor into this analysis because the letter is actually sort of a multilayered hearsay. It's not for the truth of the matter asserted. I think it is for the truth of the matter asserted if it's going to be treated as Kat made an allegation of infringement. Not if we look at it from the point of view of being a threat, that they convey a threat of infringement, of bringing an action for infringement. I still think it is. I think that the content of the letter, which is itself hearsay, and you get down to two or three different layers of hearsay, and you finally get to the Kat is saying that we alleged your patent, that's hearsay. I mean, to the extent that that's credited as that actually occurred, it is hearsay. And the other thing about that is, in the summary judgment context, is that statement is disputed. The Kat disputes that that ever happened. The salesman, Jeff Tipton, who was identified by Morris as being the person who made that statement. More or less. Well, he denied that it happened. He denied that he ever had a conversation like that with the customer that Morris identified as being the customer who received that statement. So that's a disputed fact that that ever occurred. Jeff Tipton says he never had that conversation. Matter of fact, the timing doesn't work out, because the only sale that Kat made to Wayne Farms, that client, was more than a year before the patent was even issued. So there's a disputed fact issue on that point, even to the extent that the court considers the June 2002 letter as stating that there was some sort of infringement allegation. Well, let me ask you, you're seeking here, you're not saying as a matter of law, even if all of this is true, this wouldn't constitute rise to the level of equitable estoppel. And there are you ought to reverse all your this. What this case is about is this is summary judgment. These are matters in dispute, factual dispute. And so it ought to be remanded for further inquiry. That is the argument that we made. Although I do believe that as a matter of law, even if the facts were accepted with regard to misleading conduct. Did you make that argument in your brief? I don't believe so. So it's kind of a little late for that, right? Sure. But I do believe as well that, you know, there's genuine issues of material fact on the issue of misleading conduct. There are also pretty strong genuine issues of material fact. So what are the major facts that are in dispute, whether or not they contacted the customers or not? Or whether the statements by the customers. With regard to misleading conduct, that is in dispute. Okay. So that's the main. The allegation of the June 2002 letter is disputed. With regard to the other elements of equitable estoppel, with regard to reliance, there's a dispute as to whether Morris took actions that it took in reliance on Katz not responding to the June 2002 letter. They claimed that they developed and sold their product because they believed that Katz was not going to take action. But one of their executives, Mr. Wright, testified that we would have made those investments anyway. And that was – the question was posed to him very clearly. Are you saying that you did that because Katz didn't take action? Or would you have done it anyway? And he said we would have done it anyway. And that creates a genuine issue of material fact as to reliance. Also creating genuine issues of material fact as to reliance are the belief this court has held in the past that when the defendant has a strong belief that the patent is invalid or that their product is not infringing, that there can't be summary judgment of reliance because that creates a genuine issue of material fact. And in this case, they clearly believed that the patent was invalid. They stated that in the George Thomas letter. They also stated that in their testimony in this case. That's Hall v. Aqua Queen Manufacturing and so on. But under your interpretation of those cases, how can an alleged infringer that has a sincere belief that the patent is invalid ever assert equitable estoppel? So make it a really strong case for them. They send a letter saying your patent is invalid. And you write back and say, oh, we're really sorry. I think, Your Honor, the argument – But they believe it's invalid. Sure, and the argument that we're making isn't that they couldn't assert equitable estoppel. The argument is that there's a genuine issue of material fact on that point. A point that has to be resolved by the fact finder, not its summary judgment. If they claim that they relied on the lack of a response to the letter, well, that's evidence from one side. But the other side of that is that their evidence is equivocal because Mr. Wright said otherwise. So really you're abandoning that argument from page 27 to 30 as far as it's a matter of law. Because you cite those cases and say they stand for this proposition. Yes, but I think our point is that there's a genuine issue of material fact on that point. And there are other genuine issues of material fact as well. The fact that they believe that their product was not infringing. They established that in their testimony. They did not believe that their product was infringing. So that's another point. So what? That's my point. So what? The court has held in the past that that creates a genuine issue of material fact on reliance. And it also creates a genuine issue of material fact on prejudice. Then I ask my question again. How can somebody who genuinely believes they're not infringing ever assert estoppel? They assert estoppel, Your Honor. And they've set forth their facts that show their reliance. And if there's evidence from the other side, then that's something that has to be resolved by the fact finder, not its summary judgment. So what's enough on the reliance? You talked about the reliance. So let's assume, okay, we go back, we have a trial, whatever, inquiry. And they establish, they give sufficient evidence that, yes, they did rely on this. Beyond that, what needs to be disputed? Whether or not you contracted their customers or not? What does that mean? I mean, what other facts are we going to mitigate? The issue of what is alleged in the George Thomas letter of June 2002 is also in dispute. And I think that would have to be something that is resolved as well. To the extent that that threat or that an allegation of infringement is being considered as part of the misleading conduct, that is something that would have to be discussed and determined by the fact finder as well, to the extent that there's a dispute on that point. Can you tell me what the dispute is then? I mean, the letter was sent and received. Sure. And there's no dispute about that. And we can all read the letter. To the extent that the allegations in the letter about, you know, what the letter says is that, my client, Morris, tells me that customers have told them that, representatives of CAC have told them that our product infringes your patent. And to the extent that that is considered to be an allegation of infringement or any sort of a threat, if that is going to be considered as a fact in the case, and it's going to weigh into the analysis of whether there was misleading conduct from the standpoint of whether there was a threat or an allegation of infringement, that point is disputed. Unless we turn it to the side and say, truth of the matter asserted doesn't matter. They're simply coming to you, saying we're hearing this stuff, and you internalize it and say, oh, poo, and don't respond. And so they say to themselves, they say, we said to ourselves, oh, hey, we're good. And they proceed along their merry way. So they're not asserting for the truth of the matter. Asserted is what I'm saying. Well, if the sole point is that they sent a letter that said that they weren't infringing the patent, and that's all I think that that letter establishes, is that a letter was sent claiming that Morris did not infringe the patent. And saying why. If that's all that occurred, there's no misleading conduct by Catt, because there's no conduct by Catt. Well, they ensue in silence. Yeah. Setting aside the credibility of the threat, whether Morris actually believed that contacts were being made with his customers, the letter informed your client, JBT, that there was no infringement, and that if he continued on with what they thought were the contacts, they said, we're going to bring an action against you. After that, 12 years of silence, or a long period of silence ensued on your part, and there's no conduct, there's no response. Isn't that silence the type of conduct we look in this situation? It's silence, but it's not the type of conduct that this court has examined in previous cases applying equitable estoppel. The silence has, in every case, followed some sort of interaction between the parties about the patented issue. I mean, that's the case in ABB Robotics. That's the 337 argument, though. I know it's not the patent. And there are even cases where this court has found no misleading conduct, where there were discussions about the patented issue. Where there were multiple discussions over many periods of months. Many letters exchanged. That was what happened in the SCA hygiene case. There were aggressive assertions of infringement in the Myers v. Brooks shoe case. Even the cases on which Morris relies, High Point and ABB Robotics, there were objections that the products at issue were infringing. That didn't happen here. If the letter is the only thing that occurred, CAT never did anything. There was no conduct on CAT's part that preceded its silence. And that's the key in this context, is the court has held that silence can be misleading, but only when it follows some sort of conduct that makes the silence misleading. And this court has never held that a competitor sending a letter three weeks after the patent is issued, saying, hey, we didn't infringe your patent, saying that to not respond to a letter like that is misleading conduct. The court has never held that. Just to make sure, there was no arguments below as to any implications that the amendments to the patent had on this issue? No, Your Honor. There were no arguments to that effect. Okay. We'll restore two minutes, everybody. Let's hear from the other side. Thank you. Thank you. Thank you. Did you raise any intervening rights as a defense in your answer? I do not recall, but I can address, because I think you're getting to it. May it please the court. Thank you, and good morning. I do not recall intervening rights.  Is there anything that would prevent us from looking at whether intervening rights as an affirmative defense existed? Now that I think about it, I want to say that we did, because this does speak to your issue with the re-exam. And in the complaint, there was actually a motion for a preliminary injunction. In response to that motion for a preliminary injunction, and I apologize, I don't remember this court's, there's a couple of cases that Morris cited in response, that when you have a re-exam, and you take a patent through a re-exam, you're essentially narrowing it. It's the same patent. So therefore, you don't reset the clock with respect to bringing the action, and it will stop when this goes to your question. But you now have different claims. You have narrower claims. You can only narrow a re-examination in re-examination, unlike re-issue where you could broad. So you would have different claims in a re-issue, but you would not in re-examination. And I apologize, I don't have those authorities on my fingertips. But there's two cases from this court that I think speak to that, that were cited to the lower court in opposition to a motion for a preliminary injunction. And the court relied on those and denied the preliminary injunction motion. With regard to intervening rights, I suspect that that probably was an affirmative defense, because you did have a situation where the patent claims did change. I think the original patent had two claims. It went through re-examination. I think those two claims were amended. Maybe six others were added. So that would most likely give rise to that. I apologize, I don't know for sure, but I believe that to be the case. I do not believe that there are any actual disputed facts here. What's your best case on the law? Because this does, I mean, we've had, I've seen these issues come up. They ring familiar, but what I realize is they're all in the DJ context. We've had quite a number of cases where, given something like this happening, your side goes into court with a DJ action, and the question of whether or not there was enough of a threat or an imminent threat for you to persevere on your DJ, right? Certainly. So what is your best case, your closest case, your strongest case that we have, close to the facts here? In other words, just a letter, a letter that sets out the validity. The letter, demand, your demand. A lot of lawyers send demand letters. If you're not convinced the patent is invalid, I request you provide information necessary to show why each of them do not anticipate. But then you go on to say, if you don't stop doing this, we're going to file suit against you. And the bot concludes by, let me know you've instructed your client as requested. So presumably you didn't have any other instances after this of them going to your clients and telling them about this. The rumors went away. Went away. I think we had an impartial response where more, JBT says that there were no statements before or after. So what's the case that's closest that, given this, entitles you to equitable estoppel? I would start with Scholl, I think. And let me answer generally. Each of these cases seem to be specific to their facts. And so I think there's actually some language that, you know, there's no precise formula to get there, I believe, maybe an argument. But I would probably start with Scholl from the standpoint of, hey, you do have a party that's reaching out and asking for information in response. And you have a prior dispute. I think Scholl uses the term course of dealings, and that would be analogous to the pattern of practice. Yeah. Start with even broader, and that is why equity? Why does equity exist? And what are the underlying doctrines? And one of them is unclean hands. And where does that fit here? When someone, allegedly at least, is making threats and then says, well, we can rely. Well, you can't rely. Equity is a funny critter. It is, and there's a lot we could peel out of that in the facts of this case. So I want to try to address both of these issues at the same time. When you look at the course of dealings, I think the 037 issue is absolutely relevant because it trained Morris on how JBT views patent infringement. When you have a letter, the very first letter we have, and this speaks to the evidentiary prejudice because apparently there were some letters that we don't have anymore from an attorney to Morris, and then it ultimately resulted in exchanges between the principals. We're going to sue you if we don't get this resolved. Okay, we will stop the one instance, and we will pay you. And then three months later, at least Morris believes that JBT believes that Morris Augerchiller infringes the patent. You don't need to get to the hearsay issue because it does not offer for the truth of the matter. The lower court didn't do that. The lower court said the date is what's important. The lower court did have some comments that really suggested, if not demonstrated, that he was relying on the, I don't know exactly what page this is, JA7, the same paragraph where he says he's relying, he's not relying on the contents. He says plaintiff admitted that received the letter and chose to neither respond nor enforce its patent at that time. So the letter establishes, and plaintiff does not deny, that by June 2002, plaintiff knew the defendant was selling a product that plaintiff believes infringed their 622 patent. I'm sorry, where are you reading it? I've got my notes, but it's page 7. I was on the wrong page. Oh, yes, I'm with you. Yes, yes. So that suggests that he was accepting something. But can I ask you just to go back? I really, I mean, I personally, what if they had written back and they said, we think you're wrong? Would that be sufficient to defeat equitable estoppel? I mean, you're demanding here that they give you information necessary to show that it does not anticipate the other, blah, blah, blah. But what if they had just said, you're wrong? We have the 037 patent situation to guide us on what Morris would have done there. We also have undisputed testimony from Morris' executives on what they would have done. And so what, in your scenario, Judge, had we gotten a letter back, then Morris is now in the position it can either agree or disagree. It could possibly file a declaratory judgment action at that point in time. Its options are many if they had responded. But we know they didn't respond because, out of inadvertence, but they did it out of, because it was purposeful. It was, and the lower courts found this too. They chose not to respond. So your scenario, I understand the hypothetical. It purposely didn't happen here because JBT wanted Morris to compete in the marketplace. I think there's a quote in there that… Foreigners, they didn't want to fight. Right, right. They wanted the devil they knew in Morris, not the devil they knew in some European conglomerate who might be bigger. So you have 12 years of silence here. I think the cases that we've talked about this morning maybe get up to half of that, maybe a little over. What effect do the amended claims have on the 12 years of silence? And on your reliance on that silence? What effect do the amended claims have on the silence? Well, Morris was never advised that the patent had been put into re-exam. I know in the SCA case, this court noted, indicated that, well, I think first quality could have gone in check because these are public. But the re-exam didn't occur until 11 years later. Yeah, but the complaint filed here relied on the new claims. Sorry? The complaint here is reliance exclusively on the amended claims. Which gets to the intervening rights issue. And you say you asserted that as an affirmative defense? I don't know for sure. I am happy to supplement. I can check with my colleague, but as I stand here right now, I don't know. I would expect that there would have been a defense of that because, again… Can you let us know? Sorry? You did say you asserted it in response to a motion. Well, I said that when I was speaking to you, and if I said that, I may have misspoken. Or I'm missing. Well, I want to be clear about that. In response to the question of would a successful assertion of the patent allow damages going back beyond or prior to the re-issue, the answer to that we asserted in… That was your narrowing argument. Yes, because it gets to the narrowing issue. And again, I'm happy to supplement with regard to those cases. There's two cases from this court that spoke to that. Were arguments made on this on intervening rights? I don't know that they were, Judge Reina. I think they were more directed to whether or not the issue would allow the plaintiff to go back beyond the time of the filing of the re-exam. Because those claims did not exist anymore. You were correct in that. Those claims don't exist, but the narrower claims essentially were there because they were narrowed from the broader claims. Yeah, go back to equity. Because one of the things that looks to me like a judge thought, and in general, equity doesn't like a snare. They don't like a snare, a snare and a delusion. They don't like it when one party says, well, I just will let that sit there and see what happens to the other guy because I didn't say anything. That's a snare or a trap. And I think Aukerman speaks to that about continued silence. And with regard to the inequalities of, is it truly fair for a party to lay in the weeds purposefully because they gain some business benefit for a period of time? And I believe the CEO of JBT said that from 2000 to, I'm sorry, from 2000 to 2008, JBT had about 75% of the market share. And then from 2009 to the present, their market share had slid down to around 50 to 60%. He had also said, and we cited this in the brief, it's on appendix 636, that Morris gets any sale they don't. So by implication, that means that Morris's sales would have been around 25%, but it had grown perhaps up to 40 to 50%. So the equities there speak to, provide the motivation of perhaps why JBT changed its mind and decided to reverse course. Keeping in mind too, this is not the first dispute. We've talked about the 037 patent. We also had a litigation in 2009 on a patent that was brought in the Eastern District of Carolina on a product, a device that is situated in the poultry processing line adjacent to the device that we're here about today. And in that dispute, JBT did not bring up the 622 patent. Now, I think in response, if I understand. You say the same auger-chiller design that JBT now claims is covered by the JBT patent. Different patent, different device, but in the same poultry processing line. So the device that we're here about today is a chiller. It's a large device that would stretch 50 to 100 feet, 10, 15 feet across. The device of the 2009 litigation for the 137 patent is much shorter, compact. And it's a different device, has a different purpose, but it's approximately placed to the device that we're here about today. And we did not see a counterclaim. We admit, we concede it wasn't compulsory. But it is not abnormal in a case where you have two competitors that both have patent rights where one asserts patent, you get something coming back the other way that oftentimes can end up in a cross license. So if JBT, as they have admitted, going back to 2003, believed that Morris infringed the patent, well, still as of 2009, they preferred for Morris to compete in the marketplace when it would have been absolutely easy and available to them to assert that patent. They waited, yet still further, they had to take their patent through re-exam on some of the exact same prior art that Morris gave them in 2002, somehow claiming a substantial new question of patentability 11 years later. But that ultimately resulted in the narrower claims. With regard to reliance, I don't believe that this court has any law that says that reliance, if you have an advice of counsel opinion, I believe, Judge Wallach, you spoke to this. I don't believe, I'm not aware that this court has any authority that if you have an opinion, whether your own, because some of the cases have individual belief, or you rely on counsel, that that somehow excludes you from relying on the actions of the patentee. Ockerman says substantial reliance. And the lower court found that there was indeed substantial reliance, citing to the Wafer Shade case. I would also commend to you the ABB case, the lower court before it came here. And in there, there's some really interesting language that talks about, if we went that way, you would essentially have the moment you, the only people who could assert equitable estoppel were the knowing infringers. And going back to equity, that's not fair, that's not right. It seems to me that at the point that the claims were amended, and now you have five new claims, that that's a game changer here. And you seem to think that it's not. That's correct, Judge. I would be happy if the court thinks that that's something. But how can it not be? I mean, you've got a whole, and then they assert the suit on the new claims, on new amended claims, how can it not be a game changer? I mean, doesn't that change the whole scenario about reliance and the 2002 letter? It seems to me a lot of that just doesn't apply anymore. For purposes of infringement, Morris would only possibly be liable on the new claims, to the extent that it would infringe, right? Because those claims only existed as of the day of the reexamination certificate. For liability purposes, there's a date and time, and it may have been 2013 or 14, I forget when it was. But going back for past infringement, those new claims didn't exist. And that was the issue that was before the court, as I recall, in the preliminary injunction motion. I would come back to your- Yeah, but I don't understand how that's responsive to Judge Reyna, because I have the same questions he has. If the claims change substantially, yeah, infringement is going to be based on the new claims. Everything about this equitable estoppel goes back to the validity contentions raised in 2002. If, because of reexam, those validity contentions either disappear or are significantly changed, why doesn't that also infect the notion of relying on equitable estoppel here? The only thing it's based on are assertions with regard to the invalidity of claims that no longer exist. Yeah, and I apologize to the extent that I wasn't responsive to that. I think that, okay, so estoppel is for the life of the patent, as I understand this court's authority. And to the extent that you had some actions before the reexamination, the reexamination claims, that's the same patent. It is not a new patent, so it would apply, because those claims are only narrower claims. So the extent that you have- Isn't the essence of your argument that those narrower claims necessarily fit within the broader estoppel claims? You said it better than I could. Yes, that's correct. But that alters the validity assertions that were made in the 2002 letter. Right. Well, they did successfully bring claims out of reexamination based on some of that same art, and they had to do it by narrowing. But that resets everything at that point. Let me ask you just- Let's assume this letter said claims one and two are invalid because they're so broad and they include whatever. You go in for reexam and you narrow them. So clearly, based on at least the initial invalidity contentions, which were based on breadth, no longer exist. If that's the case here, and by narrowing the claims, the stuff asserted in the 2002 letter is no longer probative of anything. In other words, if your friend looked back, he comes in, he buys the place, and he looks at this letter and he says, you know, they make a good point. These claims are overbroad and they're probably anticipatory. Let's narrow the claims. And they go in and narrow the claims. Why isn't that just the normal day-to-day? Why does that invoke equitable estoppel? I think there could be- But why isn't that just okay? These are different claims. They could have been responsive. You don't know whether anything said in the 2002 letter would be relevant anymore. And I have to apologize to the extent that that was an issue that came up at the very outset of the case that I don't believe is fully briefed here at this point. If the court would like supplemental briefing, we're happy to do that. Isn't the core of your answer that you're already on a course of conduct in which you've been misled into making what you make? Right, because we're talking about 12 years now. So at what point- I guess you have to decide at what point does equitable estoppel trigger? I think that clearly the reexamination wasn't filed until 11 years later. So it would be Morris's thought that we've been relying on this for well over a decade now. So to the extent that equitable estoppel applies to the life of the patent, why wouldn't that apply to the reexamination? Now you're arguing some form of a subset or a set of intervening rights. And I'm interested, that's why from the beginning I was asking about that particular question. Now, you said a while ago that your lack of knowledge as to the claims being amended somehow mattered. Do you have any authority for that? Well, I always bring that up because I think that came up in the SCA case, where in that case you had a party come back that said, hey, your patent is invalid. They did not ask for a response, and I think that's a key distinction. And SCA in response to that about seven months later, I believe, filed a request for reexamination. And this court in this opinion found that to be, okay, they're not just relying- they're not just being silent or inactive, they're taking action. And they're doing it in a public forum where the other party, first quality, could have found that out. This reexam didn't happen that quickly. It was 11 years later. I don't know, going back to the equities, where is the fairness? Does Morris have to keep checking just to see, you know, is there a reexam request? Is there a reexam request? How long does that happen? It seems like at some point in time that would shift from perhaps what the court was thinking in SCA. So that's what I was referring to. I'm not aware of any other case that we've cited in the briefs that speaks to whether the patentee would be required to go get a reexamination of his patent, the timeliness of doing so. There just so happens to be a fact pattern that I'm aware of in SCA. But do you understand the concern we're talking about? Assuming hypothetically the 2002 letter, the allegations that the patent was invalid, I mean, maybe they read the letter and said, geez, you're right, and it took a while for this to sift through the system, but then they said we better go and reexam and narrow the claims so that they don't encounter the anticipatory references that our friend cited in his 2002 letter. Why does that – and now they're only asserting the narrower claims, not the claims upon which the arguments with respect to invalidity were made in 2002. So why is equitable estoppel the way to go here? Do you understand the – I think I do, and I'm having to reach back to the very outset of this case where this issue came up. My response to you is that my recollection is that it's the same patent. Yeah, I'll concede it's the same patent, but if the claims are changed and narrowed in a way that arguably avoids the invalidity concerns that were raised in 2002, why doesn't that matter? And they're only asserting these new claims that don't – I mean, it's just like them saying, by the way, you were right in your 2002 letter. That's why we haven't asserted those claims against you, and indeed we're going back and doing reexam and narrowing the claims so that they don't bump against this prior art. If they had said that, would that be okay? If they'd said that back in 2002? Yeah. If they'd said something of that nature in 2002, well, now Morse is in a position to respond and to do something and to take action. It is able at that point to decide, well, if they do that, what do we do then? But that didn't happen. It was over a decade later. So I think – I'm doing my best to answer your question, but I'm not aware of any authority from this court that says, hey, reexam restarts the clock when it comes to equitable estoppel. And I would go back to your initial point. But it has to have some role when we're talking about equity. We're talking about barring a patent from being asserted under law. And that's got huge implications there. To tell a party, you can't assert this patent. You're barred by law. And so when we look at this and we look at equitable estoppel and what that means under the common law principles of equity, then there has to be some sort of role there for this intervening event that occurred. Well, I think you also have to factor into that, Judge Rainer, the length of time that it took to go get the reexam. If we were in the SCA situation, perhaps it's a different result. But you have a party that waited well over a decade. Well, maybe, but then that's the point of the argument. Now, perhaps that should be argued, and the court should take a look at that. Well, we're certainly happy to provide supplemental briefing if the court thinks that that's an issue that has not been waived at this point. Well, you said it hasn't been waived. You said it's in your answer. Well, before the court here. I don't believe that it was brought up from the appeal from the lower court's ruling on equitable estoppel. Would we be prevented from reviewing that or considering that issue in the first instance now? I would have to think about that, Judge. I mean, it seems to me that it would have been appropriate to bring it up to the trial court, to the lower court, when there was briefing on the equitable estoppel issue. It wasn't. Well, your opposing counsel was candid about that. So it would seem that there probably would be a waiver issue, but I would have to look into that. I'm not sure about that. Okay. We've far exceeded our time. Thank you very much. Thank you. Thank you. Briefly, I'd like to point out one fact that I forgot when we were talking about the previous interactions between the parties on the other patent that was resolved prior to the issuance of this patent. The first letter in that series of letters that's in the record, it's at page 236 of the appendix, Morris actually mentions in that letter that they had sent a letter to Catt, to which Catt had not responded. So it shouldn't have come as any big shock to Morris later on when they sent this aggressive letter from their lawyer that there was not a response because they had had, in the previous interaction on which they claimed to be relying, there had been letters sent to which Catt did not respond. It's the fifth paragraph of that letter where it says, since we did not receive a response indicating approval of our proposal. So the June 2002 letter was not the first time, even to the extent that this is relevant, wasn't the first time that they had received a communication to Catt that didn't elicit a response. Just real quickly, can you tell us what you think the implications are of the amended claims? To be candid, I am not prepared to speak to that today, but I do know that the complaint- Well, that's unfortunate because that is the issue here. And I apologize for that. But I do know that the complaint in this case only sought damages from and only targeted infringement from the date of the reexamination certificate forward. The certificate was issued on May 9th, 2014, and that's the date on which the damages period that's alleged in the complaint begins. That seems like a relevant factor, but as for the law on this point, I'm just not prepared to speak to it, and I apologize for that. I'd like to- I don't want to start- Well, make one when you have time. Well, I would like to respond briefly to the point that was raised in Mr. Crane's argument that there's no precise formula for determining how equitable estoppel is applied. And that's true. But this court's opinions on equitable estoppel always seem to situate what occurs in a case with regard to what has occurred in previous cases. There- I mean, there is precedent in this area. Equity works. And we do- and that's how that proceeds. The court doesn't look at this anew every time that equitable estoppel is raised. And yeah, there's room for some movement in that. But I would, you know, sum up here by saying, again, there just isn't a situation where this court has applied equitable estoppel in a circumstance like this, where the only communication between the parties regarding this patent was a letter sent by a competitor three weeks after the patent was issued. And that's the only thing that the record establishes occurred. Thank you. We thank both sides. Thank you. The case is submitted.